**Karol K. HOWARD, Plaintiff,**

v.

**BOARD OF EDUCATION OF SYCAMORE COMMUNITY UNIT SCHOOL DISTRICT NO. 427, et al., Defendants.**

No. 94 C 50175.

United States District Court,
N.D. Illinois,
Western Division.

Feb. 8, 1995.

---

Diana T. Epstein, Marilyn F. Longwell, Law Offices of Marilyn F. Longwell, Chicago, IL, Karen K. Howard, Kansas City, MO, for plaintiff.

Frank B. Garrett, Paulette A. Petretti, Everett E. Nicholas, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., George E. Rogus, Lori Dianne Isaacs, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiff, Karol K. Howard, filed a seven-count complaint against defendants, Board of Education of Sycamore Community Unit School District No. 427 (Board), Jeffrey Welcker, the principal of Sycamore High School (in both individual and official capacities) and Charles McCormick, the assistant superintendent/business manager of the DeKalb School District (in both individual and official capacities), seeking relief under 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. Jurisdiction arises under 28 U.S.C. § 1331, and venue is proper as all complained of actions occurred in this district and division. All three defendants have moved to dismiss plaintiff's complaint.

### FACTS

The facts are derived from the allegations in plaintiff's complaint. Plaintiff was employed by the Board as chair of the music department and band director from August 1991 through May 1993. During that time, she satisfactorily performed her job duties and her performance evaluations reflected her satisfactory job performance. The Board, through its employees, Welcker and Mary Fasbender (executive director of personnel), forced plaintiff to submit a letter of resignation in lieu of termination proceedings before the Board. Following plaintiff's constructive discharge, the Board replaced plaintiff with a male who was less qualified than plaintiff and who did not meet the minimum requirements for the position.

During plaintiff's employment, notes referring to plaintiff in a sexually offensive manner were posted. Plaintiff complained to Welcker and Julie Wheeler (executive director of business) about the sexual harassment. Plaintiff also complained to the junior high school principal about sexually offensive comments made by a male teacher about female students. Further, plaintiff observed offensive comments by a male teacher about a female teacher and offensive comments by male students. While Welcker and Wheeler were informed of such conduct, they took no steps to correct the hostile environment. Welcker also told plaintiff not to further complain about the harassment or "heads would roll." Thereafter, plaintiff continued to be subjected to sexual harassment until the time of her constructive discharge.

Plaintiff sets forth three counts in her complaint under Title VII. In Count I she alleges a sex discrimination claim against the Board and Welcker based on her constructive discharge and subsequent replacement with an unqualified male. Count II, also against the Board and Welcker, sets forth a claim of sexual harassment against the Board and Welcker based on the various sexually offensive conduct and comments and the lack

of action by Welcker and Wheeler to correct the hostile environment. It is further alleged in Count II that submission to such sexually offensive conduct became an implied permanent condition of plaintiff's employment because of the Board's and Welcker's refusal to eliminate the sexually hostile work environment and because plaintiff was told by Welcker not to complain or heads would roll. In Count III, also naming the Board and Welcker, plaintiff alleges that she was discharged in retaliation for complaining to Welcker and Wheeler of a sexually hostile environment and harassment. It is further alleged that the constructive discharge, the continuing sexual harassment and the failure to take appropriate corrective action all constitute retaliation in violation of Title VII.

Plaintiff also pleads three counts under Title IX, but against the Board only. Count IV realleges the essential allegations of plaintiff's sexual discrimination claim under Title VII (Count I) and further alleges that the Board's actions were "discriminatory, continuous, arbitrary, and capricious and constituted disparate treatment of [plaintiff] and, as such, were unlawful employment practices in violation of the Title IX." In Count V, plaintiff realleges her sexual harassment claim from Count II. As to Count VI, plaintiff realleges her retaliatory discharge and also alleges that the Board's conduct constituted unlawful employment practices in violation of Title IX.

Lastly, plaintiff brings Count VII against the Board, Welcker and McCormick under section 1983. Specifically, Count VII alleges that

"[t]he [Board] and Welcker, acting under color of state law, did deprive Howard of her liberty and property interests as well as equal protection of the laws and due process when they:

a. subjected her to disparate treatment because of her gender in permitting Howard to be sexually harassed;

b. failed to give Howard her rights to a hearing pursuant to [Board] and state regulations when they decided to ter-

minate her services by forcing her to take a 'constructive discharge'; and

c. constructively discharged Howard."

It is further alleged that

"McCormick, who was jointly engaged with state actors Welcker and Fasbender, did intentionally, and/or recklessly, interfere with Howard's continued expectation of employment with the [Board] by:

a. Giving false and misleading information to Welcker regarding Howard's disciplinary actions towards his son at Sycamore High School; and

b. Encouraging Welcker to force the resignation of Howard because of Howard's disciplinary actions towards his son."

## CONTENTIONS

McCormick seeks dismissal of Count VII against him in his official capacity.[1] He further contends that Count VII should be dismissed because there are no allegations that he was a state actor or that his actions were taken under color of state law. He also asserts that there are insufficient allegations that he jointly engaged with state actors so as to be acting under color of state law. Lastly, he maintains that Count VII does not state a claim for a denial of either due process or equal protection.

Plaintiff responds initially that it is improper to hold her complaint to a "heightened pleading standard." Second, plaintiff contends that it is alleged that McCormick is a state actor because he is the assistant superintendent/business manager of the De-Kalb School District or, alternatively, because he was jointly engaged with the Board and Welcker, both of whom are state actors. Finally, plaintiff asserts that she has alleged a deprivation of her property liberty interests as well as a denial of equal protection. In that regard, she contends that the right she is seeking to protect is not contractual but is instead her right not to be punished in retaliation for engaging in protected activity, such as complaining of sexual harassment

---

1. Plaintiff concedes that McCormick cannot properly be sued in his official capacity, therefore, the court dismisses Count VII to the extent it seeks relief against McCormick in his official capacity.

under Title VII. She further contends that her liberty interest was violated when Welcker told her she was to be dismissed for poor interpersonal relations with the students. She also argues that she had a protectible property interest in her continued employment and was therefore entitled to procedural due process before being terminated. As to equal protection, plaintiff posits that she has stated an equal protection claim by alleging that defendants discriminated against her based on sex, permitted sexual harassment to continue after she complained and retaliated against her.

Welcker and the Board, separate from McCormick, seek dismissal of the complaint for the following reasons. First, they contend that plaintiff's Title VII claims (Counts I–III) should be dismissed because she did not file a verified charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Second, they assert that any claims occurring before March 9, 1993 are time-barred as plaintiff did not file her charge with the EEOC within 240 days of the alleged discrimination as she was required to do where, as here, Illinois is a dual filing state requiring an initial charge be filed with the Illinois Human Rights Department and no such initial filing occurred. Third, they contend that Counts I and II are deficient in that they do not allege a causal connection between plaintiff's resignation and her gender. Fourth, they argue that plaintiff has not adequately alleged any knowledge by defendants of harassing or hostile conduct toward plaintiff. Furthermore, she has not alleged that the complained of sexual harassment was so severe or pervasive as to alter the terms or conditions of her employment and create an abusive work environment. Fifth, they contend that in Count III plaintiff has not alleged a prima facie case of retaliation. Sixth, Welcker argues that he cannot be a defendant in a Title VII action because the employer is the only proper defendant. Seventh, Welcker seeks dismissal of the Title IX claims because he, as an individual, does not receive federal financial assistance. Eight, the Board contends that the Title IX counts are deficient because plaintiff has not alleged that it knew of any of the actions of its employees and, thus, it could not have harbored the intent to discriminate as required by Title IX. Ninth, the Board maintains that it cannot be held vicariously liable for the acts of its employees under Title IX absent knowledge by the Board. Tenth, defendants argue that, even if the Board knew of the alleged events, the complaint fails to state prima facie claims under Title IX for the same reasons set forth by defendants as to Title VII.

Welcker and the Board further contend, as to Count VII, that the section 1983 claim must fail for lack of allegations as to an official custom or policy of the Board that caused her claimed constitutional deprivations. Additionally, defendants contend that plaintiff has neither alleged a protectible property interest or a deprivation of any liberty interest. They also argue that the equal protection claim is deficient because it contains no allegations of any disparate treatment resulting from an unlawful policy, custom or practice. Welcker also asserts that he must be dismissed in his individual capacity because the only allegations of his knowledge of wrongdoing as a supervisor pertain to the conduct of students, who were not state actors. Alternatively, he contends there are no allegations that he intended plaintiff to be the victim of discrimination. Further, Welcker argues he is protected by qualified immunity because a reasonable person in his position would not have considered the student misconduct to be unconstitutional and because no clearly established law made Welcker's failure to take corrective action the deliberate indifference necessary to constitute a constitutional deprivation. Lastly, Welcker and the Board contend that any claims for punitive damages should be stricken as such damages cannot be assessed against the Board or any individuals acting in their official capacities.

Initially, plaintiff responds that the motion to dismiss filed by the Board and Welcker should be denied because it was not filed within 20 days of these defendants being served as required by Fed.R.Civ.P. 12(a)(1)(A). Plaintiff also makes a broad-based initial response that the motion to dismiss should be denied because it requires a "heightened pleading standard" contrary to

established case law. Plaintiff further responds that her EEOC charge was properly signed under oath or by affirmation. Next, plaintiff posits her charge was in fact filed with the IDHR and was also timely as it was filed within 300 days from the complained-of-conduct. Plaintiff contends that Counts I, II and III set forth sufficient facts to state sex discrimination, sex harassment claims and retaliation, respectively. Further, plaintiff contends that Welcker can be held individually liable under Title VII.

As to the Title IX counts, plaintiff contends that because she has adequately alleged her Title VII claims she has also properly set forth her Title IX claims as the standards under both are the same.

Regarding Count VII, plaintiff concedes that Welcker may be dismissed in his official capacity. However, plaintiff contends she has alleged a claim against Welcker individually based on his being a state actor. Plaintiff reiterates her arguments as to the substantive claims under Count VII that she previously asserted in response to McCormick's motion. She further contends that Welcker may be held liable as a supervisor under section 1983 because his alleged inaction constitutes acquiescence in, or encouragement of, unconstitutional behavior. Plaintiff also posits that the issue of qualified immunity is premature as it depends on facts outside the complaint and that the law regarding Welcker's responsibilities was clearly established at the time of his alleged inaction. Lastly, plaintiff essentially concedes that punitive damages are unavailable from the Board, McCormick and Welcker in their official capacities.[2]

## DISCUSSION

■ In evaluating a motion to dismiss, the court must accept as true all well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 419 (7th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 346, 126 L.Ed.2d 310 (1993). Dismissal is

appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts consistent with the complaint that would entitle it to the relief it seeks. *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## I. *Count VII*

### A. Defendant McCormick

■ The only allegations in the complaint that substantively implicate McCormick are contained in paragraph 77. Therein it is alleged that McCormick was jointly engaged with state actors Welcker and Fasbender and intentionally or recklessly interfered with plaintiff's continued expectation of employment by giving false and misleading information to Welcker about plaintiff's disciplinary actions toward his son and by encouraging Welcker to force plaintiff to resign because of plaintiff's disciplinary actions toward McCormick's son. McCormick seeks dismissal of the section 1983 claim against him because, *inter alia*, it is not alleged that he is a state actor or acting under color of state law.

■ While plaintiff makes a cursory argument that McCormick is in fact a state actor based on his status as assistant superintendent/business manager of the DeKalb School District, such argument fails because it is clear from the complaint that McCormick's conduct arose not out of his position with the DeKalb school system but from his status as a parent of a child in another school district independent from the one with whom he was employed. Plaintiff argues alternatively, however, that she has properly alleged that McCormick was a state actor by virtue of his participating in joint action with other state actors.

■ To avoid the motion to dismiss, plaintiff must allege that McCormick, a private person, was acting under color of state law when he falsely discussed plaintiff's discipline of his son and encouraged Welcker to force plaintiff's resignation. *See Leahy v.*

**2.** As an alternative to both motions to dismiss, plaintiff asks leave to file an amended complaint

within 20 days of any order dismissing all or part of her complaint.

*Board of Trustees of Community College Dist. No. 508,* 912 F.2d 917, 921 (7th Cir. 1990). A private defendant acts under color of state law for purposes of section 1983 when he is a wilful participant in joint action with the state or its agents. *Id.* The complaint must contain allegations supporting the conclusion or inference that the defendant has either acted as an instrumentality of the state, performed traditionally exclusive sovereign functions or been compelled or encouraged by the state to engage in the challenged conduct. *Id.*

Here, the mere allegation that McCormick was jointly engaged with state actors is insufficient. Plaintiff's complaint, however, further points to McCormick's giving of false and misleading information to Welcker and his encouragement of Welcker for plaintiff's resignation. These further allegations also fail to state a claim of state action based on joint action. Providing information (false or otherwise) and encouraging a state actor to act in a certain way, without more, does not constitute joint action. Furthermore, these allegations are actually inconsistent with plaintiff's theory of joint action. If, for instance, McCormick and Welcker were in cahoots, then McCormick would not need to give false and misleading information to Welcker, nor would he need to encourage Welcker to carry out his will. Plaintiff has simply not set forth allegations, which if proven, would show that McCormick was jointly engaged with Welcker and Fasbender to deprive plaintiff of her constitutional rights. Thus, the court dismisses Count VII to the extent it names McCormick as a defendant individually.

**B. Defendants Board and Welcker (official capacity)** [3]

■ These defendants maintain that Count VII should be dismissed as to the

Board and Welcker in his official capacity as there are no allegations of an official policy or custom that would bind the Board for the actions of Welcker.[4] A local governmental unit, such as the Board here, is subject to suit under section 1983 because it is deemed a person within the meaning of that provision. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734 (7th Cir.1994). A local governmental unit may not be found liable, however, under a theory of *respondeat superior. Id.* It is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the local government as an entity is responsible under section 1983. *Id.* Case law has identified three situations in which local government can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Id.* at 735.

■ In the present case, the complaint is devoid of any allegations of any official policy or custom that resulted in any of the acts or omissions directed toward plaintiff. Furthermore, there are no allegations that Welcker was a person with final policymaking authority sufficient to bind the Board. While it is true that a single act or decision of a final policymaker can establish liability on the part of the Board, it must first be alleged that Welcker is such a policymaker.

---

3. Plaintiff argues that these defendants' motion to dismiss is untimely as it was filed more than 20 days past the date defendants were served with the summons and complaint. While defendants did file their motion to dismiss more than 20 days after being served, they did so because plaintiff served them on June 27, 1994 with a waiver of service of summons form which allowed defendants until August 24, 1994 to answer or otherwise plead. Defendants signed and submitted the waiver form and filed their motion to dismiss on July 15, 1994, well within the time to answer or plead. This, of course, also explains defendants' withdrawal of their previously filed motion for an extension of time to answer or otherwise plead. The court finds no basis to deny defendants' motion to dismiss as untimely.

4. Initially, the court notes that Welcker may be dismissed in his official capacity as the Board is named as a defendant.

*See Baxter,* 26 F.3d at 735. No such allegations are present here. Accordingly, the court dismisses Count VII as to the Board and Welcker in his official capacity.

### C. Welcker (individual capacity)

■ Welcker and the Board contend that Count VII does not adequately allege claims for denial of plaintiff's constitutional rights. Welcker also argues that he cannot be held liable in his individual capacity because Count VII does not allege either that he, as a supervisor, knew of a constitutional violation and recklessly permitted it to occur or that he personally intended plaintiff to be the victim of discrimination through others.

The substantively operative allegation in Count VII is paragraph 76 which states:

"The [Board] and Welcker, acting under color of state law, did deprive Howard of her liberty and property interests as well as equal protection of the laws and due process when they:

 a. subjected her to disparate treatment because of her gender in permitting Howard to be sexually harassed;

 b. failed to give Howard her rights to a hearing pursuant to [Board] and state regulations when they decided to terminate her services by forcing her to take a 'constructive discharge'; and

 c. constructively discharged Howard."

■ These allegations, even when taken with the other allegations of the complaint and viewed in a light most favorable to plaintiff, simply do not state a claim for deprivation of liberty, property or due process rights.[5] As for equal protection based on sexual harassment, while the parameters have not been precisely defined, a plaintiff must generally allege the same elements as a Title VII claim plus she must also allege an intent to discriminate, an element not required under Title VII. *Trautvetter v. Quick,* 916 F.2d 1140, 1149 (7th Cir.1990). Thus, a plaintiff seeking to sustain an equal

protection claim of sexual harassment must allege both sexual harassment and an intent to harass based upon the plaintiff's membership in a class of either males or females. *Id.*

■ Here, plaintiff has failed to specifically identify, through the allegations in Count VII, what the basis of her equal protection/sexual harassment claim is. Although she need not engage in "fact pleading," she must at the very least identify the basis upon which her legal theory is premised so that defendants can properly prepare a defense. Moreover, she has not alleged that Welcker intentionally sought to harass her by failing to take action against the students who allegedly made the sexually offensive comments. While she does allege that Welcker acted intentionally, she does so only in the context of a paragraph of Count VII seeking punitive damages. Accordingly, the court dismisses Count VII against Welcker individually.[6] In doing so, the court also points out that it is unpersuaded by the arguments in plaintiff's response to the motion to dismiss in which she asserts that she is pleading, at least in part, a deprivation of her First Amendment rights. Such an argument fails, first, because there are no allegations of a First Amendment claim contained in Count VII and, second, because plaintiff cannot amend her complaint via her brief in opposition to the motion to dismiss, *see Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir.1989).

### II. *Counts I–III* (Title VII)

#### A. Defendant Welcker

■ Welcker maintains he cannot be held liable because he is not an employer for purposes of Title VII. While the Seventh Circuit has touched upon the issue, *see Gaddy v. Abex Corp.,* 884 F.2d 312, 316–20 (7th Cir.1989) (affirming, in part, jury verdict against—but no relief from—supervisor in Title VII case); *EEOC v. Vucitech,* 842 F.2d

---

5. While plaintiff does not specify such in her complaint, the court will presume she is asserting a procedural, rather than substantive, due process claim. In either case, her allegations fail to state a deprivation of due process.

6. In dismissing Count VII in its entirety, the court grants plaintiff leave to amend Count VII, within 21 days of the date of this order, to plead an official policy or custom as to the Board and to replead any section 1983 claims.

936, 938–44 (7th Cir.1988) (affirming Title VII claim against corporate officers), it has not yet directly addressed the issue under any of the federal employment discrimination statutes.

The district courts of the Northern District of Illinois are divided on this issue. Initially, the courts denied co-employee liability based upon the limited remedies available under Title VII. *See Pommier v. James L. Edelstein Enter.,* 816 F.Supp. 476, 480–81 (N.D.Ill.1993) (Aspen, J.); *Weiss v. Coca-Cola Bottling Co.,* 772 F.Supp. 407, 410–11 (N.D.Ill.1991) (Duff, J.); *see also Bertoncini v. Schrimpf,* 712 F.Supp. 1336, 1340 (N.D.Ill. 1989) (Duff, J.) (listing cases). As originally passed, Title VII provided only equitable remedies, such as reinstatement and back-pay, that an employee could hardly be considered capable of providing. *Pommier,* 816 F.Supp. at 481; *Weiss,* 772 F.Supp. at 411. The limited-remedy rationale was undone, however, by the Civil Rights Act of 1991, which altered the remedies available under Title VII to include both compensatory and punitive damages. *See Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769, 785 n. 2 (N.D.Ill.1993) (Moran, C.J.).

In the wake of the Civil Rights Act of 1991, there are two remaining, competing schools of thought on the issue. First, courts finding the federal employment discrimination statutes to create individual liability on the part of co-employees have based that stance on the inclusion of "any agents of" in the definition of employer and on the purposes of the statutes to compensate victims of discrimination and to deter future discrimination. *See Vakharia,* 824 F.Supp. at 785–86; *see also Bertoncini,* 712 F.Supp. at 1339 (listing cases). Second, courts finding the federal employment discrimination statutes not to create individual liability on the part of co-

employees have explained that the "any agent of" language in the definition of employer is merely a mechanism for incorporating *respondeat superior* liability into the statutes. These courts then look to the exclusion of small employers from liability (for Title VII, an employer must have had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year). Because it would make little sense for Congress to have intended to exempt from liability the owner of a small business but then to make liable an individual supervisor, Congress must not have intended to make the latter liable.[7] *See Carlson v. Northwestern Univ.,* No. 93 C 5879, 1994 WL 130763, *2–3 1994 U.S.Dist. LEXIS 4770, at *4–7 (N.D.Ill. April 13, 1994) (Norgle, J.); *Finley v. Rodman & Renshaw, Inc.,* No. 93 C 5504, 1993 WL 512608, *1–2 1993 U.S.Dist. LEXIS 17308, at *2–5 (N.D.Ill. Dec. 7, 1993) (Leinenweber, J.); *see also Stefanski v. R.A. Zehetner & Assoc.,* 855 F.Supp. 1030, 1032–33 (E.D.Wis. 1994).

The second position has now been adopted in all but one of the circuits to have addressed the issue, *compare Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.1994) (ADEA);[8] *Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.1994) (Title VII); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) (Title VII); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993) (Title VII & ADEA); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (Title VII), *with Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1986), and it is the more persuasive interpretation of the federal employment discrimination statutes. *See Ostendorf v. Elkay Mfg. Co.,* No. 94 C 50170, 1994 WL 741425, *4–6 1994 U.S.Dist. LEXIS 19414, at *14–21 (N.D.Ill. Dec. 28, 1994). As a result, Title VII does

---

7. As one court stated, "If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993). A variation on this rationale is found in *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir.1994), which stated that "it would be incongruous to hold that the ADEA does not apply to the owner of a

business employing, for example, ten people, but that it does apply with full force to a person who supervises the same number of workers in a company employing twenty or more."

8. The Fourth Circuit may have left open one area where a co-employee may be individually liable, namely, sexual harassment. *Compare Birkbeck,* 30 F.3d at 510 n. 1, *with Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989).

not create liability on the part of a co-employee or supervisor, and Counts I–III are dismissed as to Welcker.

## B. Defendant Board

### 1. Unverified Charge

■ The Board argues that Counts I–III of the complaint should be dismissed because plaintiff failed to file a verified charge of discrimination before the EEOC. The Board has included a copy of the charge of discrimination filed by plaintiff with the EEOC. That document contains the following statement in the lower left-hand corner: "I declare under penalty of perjury that the foregoing is true and correct." This is followed immediately by plaintiff's signature. This would seem to resolve the issue in favor of plaintiff without further discussion except the Board, in its reply brief, points to the lack of notarization on the charge form. Indeed, the charge form, in the lower right-hand corner, does provide for notarization. It also provides parenthetically, however, that notarization is required "[w]hen necessary to meet State and Local Requirements." Such a requirement would have no efficacy in this court. Furthermore, the Board cites to no authority that the IDHR requires notarization. Rather, Illinois merely requires a written charge under oath or affirmation, 775 ILCS 5/7A–102(A)(1), as does Title VII, 42 U.S.C. § 2000e–5(b). Therefore, the Board's argument in this regard, while bordering on the frivolous, is at the very least without merit.

### 2. Timeliness of the charge

■ The Board argues that because plaintiff did not file her claim either first or simultaneous with the IDHR, she must have filed her charge with the EEOC within 240 days of the complained of conduct. This argument fails for two reasons. First, the charge-of-discrimination form filed by plaintiff states at the top that the charge is filed with the IDHR and the EEOC. Moreover, the worksharing agreement between the IDHR and the EEOC provides that all charges received by the EEOC shall be initially processed by the IDHR by an EEOC employee designated by the IDHR as its agent. *See Sofferin v. American Airlines, Inc.*, 923 F.2d 552, 554 (7th Cir.1991). Thus, plaintiff was only required to file a single written charge indicating her desire to complain to both the IDHR and the EEOC. This she did. Second, even had she not filed with the IDHR simultaneous with the EEOC, she would still have 300 days to file with the EEOC. *Id.* at 555–60. Here, plaintiff filed her EEOC charge within 300 days of the complained of conduct, thus, the court rejects the Board's timeliness argument.[9]

### 3. Count I—Sex Discrimination

The Board, in its original brief, contends that plaintiff does not allege a causal connection between her resignation and her gender. In its reply brief, the Board argues for the first time that plaintiff has not alleged, for purposes of her constructive discharge theory, that her working conditions were so intolerable, onerous and demeaning that she was compelled to leave.

■ Turning to the latter contention first, the court does not consider it for purposes of the motion to dismiss, as arguments raised for the first time in a reply brief are waived. *See Damato v. Sullivan*, 945 F.2d 982, 988 n. 5 (7th Cir.1991). Of course, if appropriate, such an argument may be raised at a later stage of the litigation.

---

9. In a footnote, the Board suggests that plaintiff is improperly embellishing her Title VII claims with "allegations including complaints to Jeff Clapsaddle about offensive comments made by a male teacher about female students" that were not contained in her written charge. Generally, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). Nonetheless, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint. *Id.* As a result, all Title VII claims brought in a complaint are cognizable if they are like, or reasonably related to, the allegations of the charge and grow out of such allegations. *Id.* Consequently, to the extent the Board has properly raised such an argument in a footnote, the court rejects it. The allegations in plaintiff's complaint are reasonably related to the claims in her EEOC charge and the facts combine to form the basis of the various claims in her complaint.

As to the Board's first contention, plaintiff has adequately alleged a prima facie claim of sex discrimination under Title VII. To do so, she must allege that she is a member of a protected class, that she satisfactorily performed her job duties, that she was discharged (or constructively discharged) and that her employer sought a replacement for her. *See Jones v. Jones Bros. Constr. Corp.*, 879 F.2d 295, 299 (7th Cir.1989). These elements may be adjusted to accommodate differing factual situations. *Id.* Here, plaintiff has alleged she is a female, she had received satisfactory performance evaluations throughout her employment, she was constructively discharged and was replaced by a less qualified male. Contrary to the Board's contention, plaintiff has adequately stated a claim for Title VII sex discrimination under the notice pleading standards of federal court.

### 4. Count II—Sexual Harassment

The Board contends that plaintiff has not stated a claim for sexual harassment because she has not adequately alleged that any harassment affected a term, condition or privilege of her employment and that the harassment was so severe or pervasive as to alter the terms or conditions of her employment and create an abusive working environment.

Title VII reaches the entire spectrum of disparate treatment of men and women in employment, including conduct having the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir.1994). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Harris v. Forklift Sys. Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (in turn quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986))). While a court must consider all of the circumstances in determining whether a work environment is hostile or abusive, it must be particularly concerned with the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating rather than a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Harris*, —— U.S. at ——, 114 S.Ct. at 371). Although the presence or absence of psychological harm or an unreasonable effect on work performance are relevant, no single factor is required. *Id.*

Additionally, the relevant factors must be viewed both objectively and subjectively. *Id.* at 1454. If the conduct is not so severe or pervasive that a reasonable person would find it hostile or abusive, it is beyond Title VII's purview. *Id.* Similarly, if the plaintiff does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of her employment, and there is no Title VII violation. *Id.* Thus, the court must consider not only the actual effect of the harassment on the plaintiff, but also the effect such conduct would have on a reasonable person in the plaintiff's position. *Id.*

In the instant case, plaintiff has alleged in Count II that she "has been subjected to a sexually hostile work environment at the [Board] based upon her sex, which harassment affected a term, condition or privilege of her employment with the [Board]." More specifically, plaintiff alleges that she complained to Welcker and Wheeler about sexual harassment, which had included notes referring to her and of a sexually offensive nature being posted. She also complained to the junior high school principal about sexually offensive comments by a male teacher about female students. Plaintiff further observed offensive comments (presumably sexual) by a male teacher about a female teacher (apparently not plaintiff) and offensive comments (again, presumably sexual) by male students. Plaintiff also alleges that such conduct was condoned, approved and encouraged by the Board through Welcker and Wheeler who, while informed of such conduct, took no steps to correct the hostile environment. Lastly, it is alleged in Count II that plaintiff, as an

implied permanent condition of her employment, was required to submit to such conduct because of the Board's and Welcker's refusal to eliminate the hostile work environment and because Welcker told plaintiff not to complain any further or "heads would roll."

The court finds these allegations sufficient to meet the minimum pleading requirements. Admittedly, some of the allegations are vague and some do not expressly identify the allegedly offensive statements as sexual. Nonetheless, when read in their entirety, the allegations adequately apprise the Board of the claim against it and the factual basis supporting the claim. Accordingly, the Board's motion to dismiss Count II is denied.

### 5. Count III—Retaliation

 The Board contends plaintiff has not alleged a prima facie case of Title VII retaliation. Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). A prima facie case of retaliation under this section requires a showing that: (1) plaintiff engaged in statutorily protected expression; (2) plaintiff suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. *Dey,* 28 F.3d at 1457. As to the first requirement, an employee may engage in statutorily protected expression under section 2000e–3(a) even if the challenged practice does not actually violate Title VII. *Id.* at 1457–58. It is sufficient if the employee has a reasonable belief that the conduct she is challenging violates Title VII. *Id.* at 1458. Regarding the causal-link requirement, generally, a plaintiff may establish such by showing that the adverse action took place on the heels of her protected activity. *Id.*

 Count III here alleges that plaintiff complained to Welcker and Wheeler about sexual harassment and about various other offensive comments apparently made in her presence. It is further alleged that Welcker told her to let the harassment continue or heads would roll and that thereafter she continued to be subjected to sexual harassment. More importantly, plaintiff claims that she was constructively discharged in retaliation for making her complaints. While such allegations are a bit thin, even under the federal notice pleading standards, they do minimally allege a prima facie case of retaliation under Title VII. First, plaintiff was entitled to complain about what she reasonably perceived to be sexual harassment and a sexually hostile environment. This is so even if plaintiff's view is ultimately proved wrong. *See Dey,* 28 F.3d at 1457–58. Second, plaintiff, as alleged, clearly suffered an adverse action when she was told to forego any complaints and was subjected to further sexual harassment. Additionally, Welcker and Wheeler took no corrective action, thereby allowing the conditions to continue. Third, the adverse action took place in close temporal proximity to her complaining. In fact, Welcker's comments to plaintiff were in direct response to her complaint. Moreover, Welcker expressly told her that heads would roll if she continued in her complaints. While such a comment might refer to the consequences other people would suffer should plaintiff persist, it is reasonable to infer at this stage of the proceedings that the comment was also directed at plaintiff. Hence, plaintiff has alleged a causal link between her complaints and the actions or inactions of Welcker. The court therefore denies the motion to dismiss Count III against the Board.

### 6. Title IX Claims (Counts IV–VI)

 The Board makes two arguments for dismissal of plaintiff's three Title IX claims. First, it contends that it cannot be found liable absent factual allegations supporting an inference that it knew of or participated in any discriminatory conduct. It cannot be liable under Title IX, the Board argues, for alleged actions which it did not specifically authorize. Second, the Board maintains that because the same legal standards apply to claims under Title IX as apply under Title VII that the Title IX counts should be dismissed for the same reasons urged by the Board for dismissal of the Title VII counts. Plaintiff counters that because the standards

governing Title VII claims have been held to apply to Title IX claims that Welcker's conduct may be imputed to the Board notwithstanding the Board's lack of knowledge of, or participation in, Welcker's conduct. Plaintiff further contends that Counts IV–VI should not be dismissed for the same reasons urged in opposition to the motion to dismiss Counts I–III.

■ The court finds the threshold and dispositive issue to be whether plaintiff need allege under Title IX that the Board knew of, or participated in, the alleged acts of sexual discrimination, harassment and retaliation, beyond merely alleging that Welcker, the high school principal, was involved in and knew of the discriminatory conduct. There is one case that directly addresses this issue, *Floyd v. Waiters*, 831 F.Supp. 867 (M.D.Ga. 1993). In that case, the district court ruled that common-law agency principles applicable under Title VII do not apply to Title IX claims. *Id.* at 876. In so ruling, the court compared the language of Title VII with that of Title IX. As pointed out by the *Floyd* court, under Title VII the term "employer" encompasses "any agent of such a person." *See id.* In contrast, Title IX defines a program or activity to mean, among other things, "all of the operations of ... a local educational agency ... or other school system." *Id.* Such definition does not include the agents of such an entity. *Id.* Several other cases, on the other hand, have applied the agency principles under Title VII cases to sexual harassment actions under Title IX. *See Lysett v. University of Puerto Rico*, 864 F.2d 881, 899–901 (1st Cir.1988); *Hastings v. Hancock*, 842 F.Supp. 1315, 1318 (D.Kan. 1993); *Patricia H. v. Berkeley Unified Sch. Dist.*, 830 F.Supp. 1288, 1292 (N.D.Cal.1993). Those cases are of very limited value, however, as they do not directly address the differences in Title VII and Title IX and are limited to sexual harassment/hostile environment claims.

This court is persuaded by the reasoning in *Floyd*. While it is not entirely clear what the precise parameters are on employer liability, it is at least evident that agency princi-

ples provide guidance in Title VII cases. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72–73, 106 S.Ct. 2399, 2408–09, 91 L.Ed.2d 49 (1986). This is so because of Congress' decision to define "employer" to include any "agent" of an employer. *Id.* at 72, 106 S.Ct. at 2408. As the *Floyd* court noted, this language is conspicuously absent from Title IX. This court will not read into Title IX language expressly included in Title VII, but left out of Title IX. When Congress enacted Title IX, it expressly revoked the former exclusion in Title VII that prohibited Title VII claims from being brought against an educational institution. Had Congress desired to expressly incorporate the agency language of Title VII into Title IX, it very easily could have done so then or since.

Concluding that agency principles do not apply to Title IX as they do to Title VII does not, however, completely resolve the issue before this court. Absent the use of traditional agency principles, the court is left with two alternatives: strict liability based on the conduct of school employees or liability premised only upon the direct knowledge or involvement of the school or educational institution. The *Floyd* court, without expressly recognizing the choice, picked the latter formulation. Again, this court agrees with *Floyd* in that the language of Title IX prohibits discrimination in any "program" or "activity" which is defined to include "all of the operations" of the school or educational agency. Absent knowledge or direct involvement by the school or educational agency, it is difficult to characterize any form of sex discrimination as an authorized program or activity of the school or educational agency. Moreover, it is difficult to imagine that Congress intended to open schools and educational agencies to virtually unlimited liability based on the conduct of their employees. Thus, this court finds that absent allegations that the Board knew of, or was directly involved in, any of the alleged discriminatory conduct in Counts IV–VI, plaintiff cannot maintain a claim against the Board under Title IX.[10]

10. In dismissing Counts IV–VI without prejudice, the court grants plaintiff leave to amend her

complaint within 21 days of the date of this order to include such allegations as to the Board. The

Because the court dismisses Counts IV–VI for the reasons set forth above, it need not reach the question of whether these counts properly allege claims for sex discrimination under Title IX. Nonetheless, the court observes that because it has already found the same allegations to suffice as to Counts I–III (Title VII claims), and because it considers the substantive analysis for Title VII claims to apply to Title IX claims, plaintiff has set forth allegations in Counts IV–VI that would be sufficient to state claims under Title IX.

## CONCLUSION

For the foregoing reasons, the court denies the motion to dismiss Counts I–III as to the Board but grants the motion with prejudice as to Welcker. The court grants the motion to dismiss Counts IV–VI without prejudice. Regarding Count VII, the court dismisses that count with prejudice as to Welcker and McCormick in their official capacities and dismisses it without prejudice as to McCormick individually, Welcker individually and the Board. Plaintiff is given leave to file an amended complaint as to Counts IV–VII within 21 days of the date of this order.

court cautions plaintiff, however, that the status of Welcker as principal is insufficient by itself to fulfill the pleading requirements as set forth

herein. Plaintiff must allege that the Board itself knew of the complained of conduct or was directly involved in the alleged discrimination.