**Gamal S. NAGUIB, Plaintiff,**

v.

**ILL. DEPT. OF PROF'L REG.,**
**et al., Defendants.**

No. 97 C 3879.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 3, 1997.

Gamal S Naguib, Oak Brook, IL, Pro se.

Elizabeth M.S. Looby, Illinois Attorney General's Office, Chicago, IL, David Brian Ritter, Janet M. Kyte, Altheimer & Gray, Chicago, IL, for Illinois Dept. of Prof'l Reg.

Elizabeth M.S. Looby, Illinois Attorney General's Office, Chicago, IL, for Nikki M. Zollar, Mary Ann Benden, Marion Sirefman, Michael Lowery, Michael Vold, Daniel O'Sullivan, Martin Sanders.

David Brian Ritter, Janet M. Kyte, Altheimer & Gray, Chicago, IL, for Allen Malnak.

Robert L. Nora, Johnson & Bell, Ltd., Chicago, IL, for Stuart Sanders.

Stephen David Erf, Eric Eugene Mennel, McDermott, Will & Emery, Chicago, IL, for Howard Glassford, Robert T. Zeck, John Nathan, Robert A. Beatty, Hinsdale Hosp.

Joseph E. Tilson, Josh Michael Friedman, Bates, Meckler, Bulger & Tilson, Chicago, IL, for Bernard C. Pecaro.

Clare E. Connor, Tom H. Luetkemeyer, Hinshaw & Culbertson, Chicago, IL, for Nicholas Choukas.

James E. Dahl, James E. Dahl & Associates, Chicago, IL, for Norman P. Jeddeloh.

Robert Leslie Byman, Jenner & Block, Chicago, IL, for John Simon, State Attorneys Office.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court are several Defendants' motions to dismiss.[1] For the reasons that follow, Naguib's Second Amended Complaint against Zollar, Benden, Sirefman, Lowery, Reynolds, Vold, and O'Sullivan is dismissed for lack of subject-matter jurisdiction. Additionally, Defendants' motions to dismiss Naguib's Second Amended Complaint is granted in favor of Hinsdale, Glassford, Nathan, Zeck, Beatty, Pecaro, Jeddeloh, and Simon. Malnak's motion to dismiss Naguib's § 1983 claim is granted, but Naguib's § 1985 claim shall continue against Malnak. As for M. Sanders, S. Sanders, and Choukas, the court denies their motions to dismiss.

## I. BACKGROUND

Plaintiff Gamal S. Naguib ("Naguib") is a licensed dentist, suing twenty-one individuals and entities (collectively "Defendants") for allegedly violating 42 U.S.C. §§ 1983 and 1985 (1994). In an effort to state a claim,

Naguib throws everything into his Second Amended Complaint ("Complaint"), including the proverbial kitchen sink. As a result of Naguib's unintelligible sentences and paragraphs,[2] Naguib made it difficult and time consuming to unravel what role each Defendant played, if any, in the alleged "massive conspiracy." The following facts and allegations are what could be reasonably discerned from Naguib's pleadings.[3]

### A. Naguib's Complaint

#### 1. Parties

Naguib sued the following employees of the Illinois Department of Professional Regulation ("Department")[4] in their official capacities: (1) Nikki M. Zollar ("Zollar"); (2) Mary Ann Benden ("Benden"); (3) Marion Sirefman ("Sirefman"); (4) Michael Lowery ("Lowery"); (5) Bruce Reynolds ("Reynolds"); (6) Michael Vold ("Vold"); and (7) Daniel O'Sullivan ("O'Sullivan"). (Pl.'s Am. Compl. at 1–2.)

Defendants Allen Malnak ("Malnak"), a licensed physician, and Nicholas Choukas ("Choukas"), a licensed dentist, connected in some capacity with Gottlieb Hospital, are sued in their personal capacities. *Id.* at 2.

Defendants Martin Sanders ("M.Sanders") and Stuart Sanders ("S.Sanders"), licensed dentists, connected in some capacity with the Department, are sued in their personal capacities. *Id.*

Defendants Howard Glassford ("Glassford"), Robert T. Zeck ("Zeck"), Robert A. Beatty ("Beatty"), licensed physicians, and John Nathan ("Nathan"), a licensed dentist, connected in some capacity with Hinsdale Hospital, are sued in their personal capacities. *Id.* at 2–3. Defendant Hinsdale Hospital ("Hinsdale") is sued in its general capacity. *Id.* at 3.

Defendant Bernard C. Pecaro ("Pecaro"), a licensed dentist and physician, connected in

---

1. The following Defendants have not filed a motion to dismiss Plaintiff's second amended complaint: (1) Bruce Reynolds; (2) Charles Locker; and (3) State's Attorney's Office.

2. In addition, due to the frequency of Naguib's grammatical errors, the court notes at the outset that Naguib's mistakes will not be followed by "[sic]."

3. To the extent possible, the court only addresses the allegations and facts which relate to the named Defendants.

4. The Department was previously dismissed with prejudice. Thus, Naguib omitted the Department under "Parties" in his Complaint.

some capacity with Columbus and Northwestern University, is sued in his personal capacity. *Id.*

Defendant Norman P. Jeddeloh ("Jeddeloh"), Charles Locker ("Locker"), and John Simon ("Simon"), licensed attorneys, are sued in their personal capacities. Defendant State's Attorney's Office ("State's Atty's Office") is sued in its official capacity.[5] *Id.*

### 2. *Factual Allegations*

As a summary, Naguib alleges that

defendants are involved in illegal investigation, massive conspiracy, retaliation and discrimination against the Plaintiff that was in the making and came to surface by Gottlieb Hospital and its IPA director defendant Dr. Allen Malnak, who used the Illinois Department of Professional Regulation State "agency" to create and fabricate charges of their own making in order to force the Plaintiff out of practice that he grandfather for the past 28 years because of the plaintiff national origin ancestry "Egyptian."

*Id.* at 4.

Twenty-eight years ago, when Naguib was participating in an anesthesia training program at Cook County Hospital, M. Sanders was a dental student and a part-time technician at Cook County's anesthesia department, and S. Sanders was a resident at the hospital. *Id.* at 5. Allegedly, M. Sanders and S. Sanders "were antagonistic against the Plaintiff because of his national origin ancestry 'EGYPTIAN.'" *Id.* (capitalization in original). M. Sanders allegedly said to Naguib "'when the time will come you will be pushed against the wall.'" *Id.* Naguib asserts that M. Sanders and S. Sanders have been waiting 28 years to eliminate Naguib from the dentistry profession because of their personal vendetta against him. *Id.*

According to Naguib, the massive conspiracy against Naguib began in June 1992. *Id.* at 6. While taking a coffee break at Gottlieb Hospital ("Gottlieb"), three doctors from Gottlieb approached Naguib and cordially invited him to join Gottlieb's Independent Physician Association ("IPA") which is a joint venture between Gottlieb and Westtown Medical Practice. *Id.* Naguib completed the necessary application form, and submitted it along with his resume and a check for the requested fee in the amount of $750.00. *Id.* On October 28, 1992, IPA's "credentialing committee" denied Naguib's application, and returned his check to him. *Id.*

Naguib alleges that the three doctors that approached him were "Dr. S.J. Hasanain, Dr. F. Friedman, and Dr. E. Ebron[6] 'close friend and neighbor to the Sanders, who knows Jeddeloh.'" *Id.* Thus, Naguib concludes "[w]hat was actually behind this invitation was an orchestrated, harassment and discrimination by Gottlieb hospital using its IPA/PHO Westtown Medical Practice as a tool to initiate and start the set up." *Id.*

When Naguib was invited to join the IPA, he was told that Westtown Medical Practice was responsible for paying for the patients that were referred to him. *Id.* at 7. "Despite the repeated request from the plaintiff to Westtown to produce payment for service rendered to those patients, defendant Dr. Allen Malnak refused to issue any payment! to the plaintiff." *Id.* Additionally, after Naguib submitted his application to join IPA, defendant Dr. Allen Malnak, and Dr. Frank Friedman and Ken Fishbain "started an abusive and hostile atmosphere, and unpleasant working environment picking on the plaintiff nationality 1 and his degree 2, until it reached to a point that the plaintiff felt it is unsafe for him and his patient that he treat and admit that hospital 'Gottlieb'!" *Id.*

Allegedly, in order to further his own special interests and economic advantage, Choukas intimidated and harassed Naguib, making Naguib's life miserable. *Id.* at 8.

Zollar "unleashed the [Department's] discriminating crew to fabricate and manufactured evidence which is merely their own making to start defamation the plaintiff character and invite other defendant to practice their own malicious acts." *Id.*

---

5. All named dentists and physicians are licensed in the State of Illinois, and all named attorneys practice in the State of Illinois.

6. Naguib does not name these three doctors as Defendants in his lawsuit.

Naguib states that he hired Jeddeloh "to represent him and protect his interest and his constitutional rights." *Id.* "Despite the detailed conversation and the obvious situation of discrimination defendant Mr. Jeddeloh insisted that all issues will be ironed and things will be back to normal, its merely a misunderstating." *Id.* Naguib further states that Jeddeloh never advised him that agencies such as the Equal Employment Opportunity Commission ("EEOC") or the Illinois Department of Human Rights ("IDHR") existed. *Id.* at 8–9. To the contrary, Naguib asserts that Jeddeloh "misguided the Plaintiff by mentioning that Jim Burns U.S. attorney office is responsible reference to similar matters, elaborating that a complaint like that will take 7–10 years to be looked at!!" *Id.* at 9. Furthermore, Naguib states that "[t]he link between defendant Mr. Norman P. Jeddeloh, Dr. Ebron, and the defendants Sanders brothers cannot be ruled out." *Id.*

"With the presence of defendant Dr. N. Choukas member of the Gottlieb hospital IPA/PHO and Westlake hospital 'Synergon Health System' and his family, sons and their spouses, 'Melrose Park', Illinois, 'the city' became a power house. Being the [Department] agency is politically controlled by the same interest group and as planned, it did not take that long for the agency TO STEP IN." *Id.* (capitalization in original).

At that point, Naguib hired Simon to deal with the allegations before the Department which Naguib declares are the same allegations disseminated by Gottlieb, M. Sanders and S. Sanders. *Id.* On February 23, 1994, a meeting was scheduled before the Department. *Id.* at 10. Both Naguib and Simon attended the meeting. *Id.* Prior to the meeting, Naguib asked Simon to audio-tape the meeting. *Id.* Simon "responded that this may trigger hard feelings and defendant Dr. Michael Vold the department dental coordinator may be offended!" *Id.* At the meeting, Simon and Vold "were exchanging comments and kidding regarding that Defendant Michael Vold choose the day of the storm ha, ha, ha, etc." *Id.* "Each time the plaintiff said good bye to defendant John Simon, The Defendant walked backward staring at the Plaintiff in a certain strange way ... but the plaintiff did not understand why the defendant John Simon does that?!" *Id.*

In April 1994, Naguib did not receive renewal on his liability insurance. *Id.* When he called his insurance company to inquire, the company told him that they had not received his payment. *Id.* Naguib then produced proof to show that he had paid all of his premiums in full. *Id.* Thus, the insurance company renewed his liability insurance. *Id.* "Later on it was discovered that there was some documented material which was initiated by the Defendant John Simon with branches of this company!! Earlier in January, 1994." *Id.*

On April 23, 1994, Naguib "rendered multiple and extensive surgery procedures to a victim of a car accident who sustained severe Orofacial trauma at Cabrini Hospital and saved her life." *Id.* at 11. The Plaintiff was shocked to learn that the victim had hired an attorney, Locker, who black-mailed him "with the matter before the Department of Professional Regulation and used as an excuse to deprive the Plaintiff from the funds that it should be paid for his service." *Id.* Naguib's charges against Locker for attorney misconduct are still pending before the Illinois Attorney Registration and Disciplinary Commission. *Id.* Naguib was further shocked to learn that Locker knew about the matters before the Department because information regarding such proceedings are allegedly not available to the public. *Id.* Hence, Naguib questioned Locker about his relationship to the Department. *Id.*

On May 1994, the Department sent him a notice of a disciplinary conference. *Id.* Simon assured him that this was a routine, informal meeting. *Id.* Prior to attending the meeting, Naguib hired a special audio-tape recording company to audio-tape the meeting. *Id.* Naguib maintains that Simon "was furious, and upset and shouted at the Plaintiff, 'you are acting like you are your own lawyer,' and told the Plaintiff that this is not necessary because this meeting is informal and asked the Plaintiff to play low key so they will be nice with him!!" *Id.* Naguib was very concerned and wanted to properly record the meeting. *Id.* Although Simon allegedly promised that there would be some-

one there to officially and impartially transcribe the meeting, no such person was present. *Id.* During the meeting, Naguib was shocked when he saw that Simon was not doing anything. *Id.* "At that time the Plaintiff realized that his own attorney the Defendant Mr. John Simon is a part of a deep conspiracy." *Id.*

"At that time the Plaintiff was still in a nightmare, trying to deal with the situation that commenced at Gottlieb hospital and its IPA and Synergon Health System and also the Department of Professional Regulation. 'The suspicious link between all parties involved was obvious.' " *Id.*

According to Naguib, the Department filed a complaint against him on November 17, 1994, despite the lack of probable cause. *Id.* The Department's complaint allegedly contained "fabricated allegation created by the Defendants." *Id.* at 12. Naguib states that the Department's complaint charged him with violating the dental, medical, and hospital license acts. *Id.* Naguib asked Jeddeloh to represent him with this matter. *Id.* At that time, Naguib "noticed some conflicts [in Jeddeloh's] statements and actions, also excuses and untruthful statements and unethical tactics, the way he was handling the Plaintiff defense." *Id.* Allegedly, Jeddeloh employed delay tactics which benefited the Department, Gottlieb and its IPA and Synergon Health System, M. Sanders and S. Sanders, and Jeddeloh. *Id.* On July 4, 1995, the Department amended its complaint. *Id.* at 13. In November 1995, Jeddeloh informed him "what the previous hearing officer strike from the counts was put back by the new hearing officer, according to Mary Benden's demand." *Id.* Jeddeloh then paused and stated " 'too bad you have been screwed'!!" *Id.*

Because of Naguib's growing suspicions against Jeddeloh, Naguib sought another opinion from Mr. Aldo Botti, who advised him that he would need to examine Naguib's file. *Id.* Naguib terminated Jeddeloh's representation. *Id.* Before producing Naguib's file, Jeddeloh "requested additional fund in the amount of one thousand and one hundred ninety dollars and twenty one cents." *Id.* Naguib provided the funds to Mr. Andrew Acker, who traveled to Jeddeloh's office to obtain Naguib's file. *Id.* Thereafter, Mr. Acker compared Jeddeloh's file with the Department's file and allegedly discovered that Jeddeloh had not produced a complete file. *Id.*

Allegedly, Naguib found a ten-page transcript of a hearing on March 13, 1995. *Id.* Naguib exclaims that the transcript

> contained the most malicious, unethical, damaging statements that any one could do this his client before a hearing officer using inflammatory statement to influence the basic human reaction and response of the hearing officer and saturate her or his feeling with a negative response toward his client in order to damage and assassinate his client character and obstruct justice, the conspiracy was obvious.

*Id.* Naguib attached this hearing transcript to his Complaint. *Id.* The transcript states that Jeddeloh moved to expunge some prior disciplinary action from the Department's records. *Id.* at Ex. 108. Jeddeloh argued that any discipline based on expunged criminal matters in Ohio should likewise be expunged from the Department's record.[7] *Id.*

Naguib insists that his investigation revealed that Jeddeloh was employed in some way by Illinois University Hospital, Westlake, Gottlieb, several managed care organizations, and that he has good connections with the Department. *Id.* at 14. Based on Jeddeloh's "entire political background societies, organization, and personal touch with lots of individuals," Naguib concludes that

---

**7.** The court notes that Naguib's exhibit 106 conflicts with exhibit 108. (*See* Pl.'s Ex. 106; Pl.'s Ex. 108.) Both exhibits are allegedly transcripts of a proceeding held before the Department of Professional Regulation on March 13, 1995, and reference a motion to expunge some disciplinary action. *Id.* However, exhibit 106 shows the relevant parties were Mr. Morgenstern, who was present on behalf of Dr. Momley, whereas exhibit

108 shows the relevant parties as Jeddeloh, who was present on behalf of Naguib. *Id.* Although the exhibits conflict, the court will accept Naguib's assertion that exhibit 108 is the authentic transcript. *See Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir.1997) (Pro-se complaints shall be liberally construed, and all reasonable inferences must be drawn in the light most favorable to the plaintiff.).

Jeddeloh "was dragging the Plaintiff to a deep water, not working for the Plaintiff defense but for the Plaintiff downfall." *Id.*

Naguib further contends "what is common between the Department of Professional Regulation and the Defendant Mr. Norman P. Jeddeloh is a proven conspiracy to influence the decision of the administrative hearing officer 'Shari Dam.' " *Id.* This alleged massive conspiracy "was widening to an extent that the Plaintiff receive calls and requests every day from different entities requesting personal information claiming that it is required for the Plaintiff credential.......!!!!?" *Id.*

On January 10, 1996, Naguib sought the assistance of the Attorney General. *Id.* Naguib hoped that the Attorney General would protect him against the alleged massive conspiracy.[8] *Id.*

In March 1996, Ms. Dalal Jarad introduced Naguib to "Mr. Green." [9] *Id.* Both agreed to assist Naguib with the matter before the Department. *Id.* On March 12, 1996, Mr. Green's "attitude was completely different !! and he started with a barrage of unfounded rumors, that the Plaintiff is quite familiar with because the Sanders! have been spreading these rumors before." *Id* . Allegedly, the meeting was prearranged with Lowery, the Department's attorney, as an effort to force Naguib to accept a severe punishment from the Department. *Id.*

On February 5, 1996, Beatty, chairman of the credential committee at Hinsdale, told Naguib that he needed evidence in support of Naguib's existing privileges, "based upon an inquiry, which was created by Defendant John Nathan one of the credential committee member for no reason, except his mysterious connection with the [Department]." *Id.*

On June 24, 1996, Zeck informed Naguib that the Department subpoenaed him, "requesting portions! of Naguib's file in response to a patient complaint filed 1991??!" *Id.*

### B. Naguib's Responsive Pleadings [10]

Based on the facts alleged in his Complaint, Naguib repeatedly argues that

[t]his Honorable Court must recognize that the Plaintiff is a victim of Discrimination through illegal investigation massive conspiracy, official and "Professional" misconduct and organized crime network which initiated, orchestrated and organized by individuals who have one common goal "meeting of the minds" against a well known citizen because of his national Origin ancestry, Egyptian for their special interest and economic Advantage.

(Pl.'s Reply to Malnak at 3; *see also* Pl.'s Reply to S. Sanders at 3; Pl.'s Reply to Hinsdale et al. at 3.)

With respect to M. Sanders and S. Sanders, Naguib alleges that they waited 28 years to use their positions with the Department to eliminate Naguib from the profession because Naguib is an economic threat to them. (Pl.'s Reply to M. Sanders et al. at 2; *see also* Pl.'s Reply to S. Sanders at 2.) Naguib also alleges that S. Sanders' "ties to The [Department], Gottlieb Hospital, A. Malnak, N. Jeddeloh M. Sanders (Brother) and previous history of negative stand against the Plaintiff is a well proven facts supported by documents and witness." (Pl.'s Reply to S. Sanders at 3.)

With respect to Malnak, Naguib alleges that he used Gottlieb "as a tool not only to deny the plaintiff rights to practice at Gottlieb Hospital but to cripple the Plaintiff nationally by DISSEMINATING FALSE INFORMATION COORDINATING HIS CREATION WITH THE DEPARTMENT OF PROFESSIONAL REGULATION 'APPOINTED' ! STAFF AND PERSONNEL." (Pl.'s Reply to Malnak at 4 (capitalization in original).) Naguib further adds that

---

8. The Attorney General is not a named Defendant. It is uncertain whether Naguib intended to name the Attorney General or whether Naguib intended to make these allegations against the State's Atty's Office. Since the State's Atty's Office has not filed a motion to dismiss, this discrepancy need not be resolved in this opinion.

9. Neither Ms. Jarad or Mr. Green are named Defendants.

10. Since Naguib is a pro-se litigant, the court must consider all facts alleged in his responsive pleadings. *See Gutierrez v. Peters,* 111 F.3d 1364, 1367 n. 2 (7th Cir.1997).

[Malnak] coordinated and conspired with a state official the [Department] to start illegal investigation which lead to malicious prosecutorial misconduct by state official conspiring with the plaintiff's defense particularly Norman P. Jeddeloh and the ties between the Defendant and Martin Sanders, STUART Sanders, M. Vold, M. Lowery, Bruce Reynolds all fall in a well established network who created false allegation to satisfy their personal vendetta Against the plaintiff.

*Id.* at 6.

With respect to Choukas, Naguib states that Choukas was a member of IPA's credentialing committee when Naguib's application was denied. (Pl.'s Reply to Choukas at 7.) Naguib also states that Choukas intimidated, harassed, and threatened him as a part of a conspiracy with the Department. *Id.*

With respect to Nathan, Naguib alleges that Nathan "is indeed a member of the credentialing Committee and Again started a negative inquires to start investigation action against the plaintiff without any reason Sound Familiar ! That Shows the link between Defendant J. Nathan and other major players." (Pl.'s Reply to Hinsdale et al. at 2.) Naguib further alleges that Beatty should have known that Nathan's inquiry was pure harassment and malicious in nature, rather than be "abusive, irrational, and indifferent" towards Naguib. *Id.* at 5.

With respect to Glassford, Naguib asserts that Glassford made negative statements about Naguib to the Department which could only be explained by "the link between The [Department], S. Sanders (the only Member) In Hinsdale Hospital I.P.A. ! and other defendants." *Id.* Naguib professes that "[t]his cause could have been avoided and all the atrocities could have been also avoid if the state agency [the Department] investigated the motive of all defendants before starting their torture and going farther with shameful proceeding." *Id.* at 7.

With respect to Pecaro, Naguib states that he sent a letter to Pecaro on January 19, 1993, requesting Pecaro to credit him for his experience and training so that he could obtain board certification. (Pl.'s Reply to Pecaro at 9.) Naguib further states "[a]pparently,

Mr. Bernard C. Pecaro got upset because of the Plaintiff remarkable performance so he violated each and every code of professional ethics." *Id.* Allegedly, instead of helping Naguib, Pecaro used Naguib's curriculum vitae "AS TOOL FOR the Department of Professional Regulation to misrepresent and twist facts and TORTURE the Plaintiff with fraudulent accusations, and kept him hostage for Illegal [in]vestigation in order to drain the Plaintiff financially...." *Id.* (capitalization in original). Naguib asserts that "Pecaro discriminated the Plaintiff by joining a massive conspiracy plot with Gottlieb hospital and its IPA/PHO medical director Allen Malanak." *Id.* at 11.

Pecaro's letter to Naguib states: "I am not authorized to recommend maxillofacial certification. And I believe no such certification exists in the U.S. The only certification that I am aware of in oral and maxillofacial surgery is certification following advanced training in an A.D.A. accredited program." *Id.* at Ex. 128. In his letter, Pecaro also cautions Naguib to refer his patients to a specialist if they require surgery that is "beyond those normally done by general dentists" since Naguib is not certified to perform oral and maxillofacial surgery. *Id.*

With respect to Jeddeloh, Naguib alleges that Jeddeloh refused to disclose "AFFIDAVIT OF A CLINICAL DATA MANAGER AND A {SURGEON / DENTIST}" to the Department. (Pl.'s Reply to Jeddeloh at 5 (capitalization in original).) Naguib further alleges that Jeddeloh failed to adequately defend him against the Department's allegations. *Id.* at 7.

With respect to Simon, Naguib adds that Simon is a fraternity friend of Vold, and that Simon relied on Vold's information which was completely false and unreliable. (Pl.'s Reply to Simon at 3, 5.) Naguib also states that Simon refused to disclose "AFFIDAVIT OF A CLINICAL DATA MANAGER AND A [SURGEON / DENTIST]" to the Department. *Id.* at 4 (alteration and capitalization in original). Further, Simon allegedly failed to refer Naguib to an experienced attorney. *Id.* Finally, Naguib contends that Simon

failed to adequately defend him against the Department's allegations. *Id.* at 6.

## II. DISCUSSION [11]

The court will deny a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless "it is impossible [for the plaintiff] to prevail 'under any set of facts that could be proved consistent with [his] allegations.'" *See Albiero v. City of Kankakee,* 122 F.3d 417, 419 (7th Cir.1997) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In reviewing the plaintiff's complaint, the court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *See Gutierrez v. Peters,* 111 F.3d 1364, 1368–69 (7th Cir.1997).

■ Furthermore, it is well-established in the Seventh Circuit that the court must liberally construe pro-se complaints with an understanding eye. *Id.* at 1369. "Indeed it is the 'well-established duty of the trial court to ensure that the claims of a pro se litigant are given a fair and meaningful consideration.'" *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 555 (7th Cir.1996) (*quoting Palmer v. City of Decatur,* 814 F.2d 426, 428–29 (7th Cir.1987)). The Seventh Circuit has further stated that "facts alleged in a brief in opposition to a motion to dismiss ... as well as factual allegations contained in other court filings" may be considered when evaluating the sufficiency of pro-se complaints. *Id.* at 1367 n. 2; *see also Albiero,* 122 F.3d at 419. Of course, a "plaintiff can 'plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.'" *Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.,* 125 F.3d 481, 483 (7th Cir.1997).

"[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Id.*

■ Naguib purports to state a claim pursuant to 42 U.S.C. §§ 1983 and 1985.[12] (Pl.'s Am. Compl. at 1.) In order to state a valid § 1983 claim, Naguib must allege that (1) a person acting under color of state law engaged in conduct that (2) deprived a person of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (1994); *see also Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir.1994). Private individuals cannot be held liable under § 1983 unless they conspire with a state actor to achieve a common, unconstitutional goal. *See Vickery v. Jones,* 100 F.3d 1334, 1343–44 (7th Cir.1996); *Csoka v. United States,* 94 F.3d 647, 1996 WL 467654, at *3 (7th Cir. 1996); *Starnes,* 39 F.3d at 1397.

■ In order to properly state a § 1985(3) claim, Naguib must allege that (1) two or more persons conspired (2) for the purpose of depriving a person equal protection of the laws (3) and that at least one such person acted in furtherance of such conspiracy (4) "whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3) (1994); *see also Majeske v. Fraternal Order of Police, Local Lodge No. 7,* 94 F.3d 307, 311 (7th Cir.1996). Naguib must show " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' " to satisfy the second element of a § 1985 claim. *See Majeske,* 94 F.3d at 311.

---

**11.** The court admonishes all counsel for their inadequate briefs which failed to set forth all relevant facts and arguments. The court has been forced to engage in lengthy research and analysis without the aid of instructive briefs which, in turn, have caused an unfortunate waste of judicial resources.

**12.** Many Defendants have read Naguib's Complaint to state a cause of action pursuant to Title VII. These Defendants argue that Naguib's Complaint should be dismissed because it is well-established in the Seventh Circuit that individuals are not liable under Title VII. *See Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995). Naguib does not purport to state a Title VII claim nor allege in his pleadings that the Defendants are his "employers." In any event, to the extent that Naguib's Complaint attempts to state a Title VII claim, it is dismissed in favor of all Defendants.

Even under federal notice pleading standards, a plaintiff must set forth facts, rather than conclusory allegations, which give rise to a claim for relief. *See Ahmed v. Quinn*, 124 F.3d 203, 1997 WL 471335, at *3 (7th Cir.1997); *see also Thomas v. Ill. Dept. of Public Aid*, 1997 WL 473917, at *2 (N.D.Ill. Aug.15, 1997); *Copeland v. Northwestern Memorial Hosp.*, 964 F.Supp. 1225, 1235 (N.D.Ill.1997). A complaint which merely contains conclusory allegations of a conspiracy or discrimination will not survive a motion to dismiss. *Id.* Allegations of a conspiracy " 'must further be supported by some factual allegations suggesting a "meeting of the minds." ' " *Ahmed*, 1997 WL 471335, at *3 (citation omitted); *see also Copeland*, 964 F.Supp. at 1235. Moreover, bald assertions of discriminatory animus behind the conspirators' action, unsupported by any meaningful, factual allegations is not enough to withstand a motion to dismiss. *See Bombliss v. County of Lee*, 23 F.3d 410, 1994 WL 117970, at *3 (7th Cir.1994); *see also Thomas*, 1997 WL 473917, at *2.

### 1. *The Department's Agents*

Naguib named the following employees of the Department in their official capacities: Zollar, Benden, Sirefman, Lowery, Reynolds, Vold, and O'Sullivan ("Department's Agents"). The Department's Agents, with the exception of Reynolds, move to dismiss [13] Naguib's Complaint which they argue merely asserts an employment discrimination claim. As such, the Department's Agents fail to address whether Naguib has stated a cause of action pursuant to § 1983 or § 1985 which is not limited to employers.

Nevertheless, "[f]ederal courts lack subject-matter jurisdiction over suits by a citizen against [his] own state, its agencies, or state officials acting in their official capacities ." *Young, M.D. v. State of Ill.*, 111 F.3d 134, 1997 WL 173930, at *1 (7th Cir.1997); *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir.1994) (The Eleventh Amendment bars federal courts from deciding suits brought by private litigants for monetary damages against state officials in their official capacities.); *Osteen v. Henley*, 13 F.3d 221, 223 (7th Cir.1993) (Although the Eleventh Amendment "does not go so far as to allow state officials to ignore federal law with impunity," it does bar suits for monetary damages against state officials in their official capacities.). "A state may waive its sovereign immunity only by state statute, a state constitutional provision, or by state officials with specific authority to waive such immunity." *Young*, 1997 WL 173930, at *1.

The district court in *Brazdo v. Ill. Dept. of Prof'l Reg.*, No. 94 C 134, 95 C 2066, 1995 WL 733445, at *3 (N.D.Ill.1995), held that the Illinois Department of Professional Regulation is an arm of the state, and that a suit against it or its officers is a suit against the state, as a matter of law. Illinois has not waived its sovereign immunity, and none of the Department's Agents have the authority to do so. Thus, the Eleventh Amendment bars Naguib's § 1983 and § 1985 claims against the Department's Agents in their official capacities. *See id.; see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Bethesda Lutheran Homes and Serv., Inc. v. Leean*, 122 F.3d 443, 444 (7th Cir.1997) ("Insofar as the suit seeks damages from a state official in his official capacity, it is clearly barred by the Eleventh Amendment.").

Despite the fact that the Department's Agents "never raised the issue of sovereign immunity, it is so fundamental to federal jurisdiction that courts may raise it of their own accord." [14] *Young*, 1997 WL 173930, at *1. Accordingly, Naguib's Complaint against Zollar, Benden, Sirefman, Lowery, Reynolds, Vold, and O'Sullivan is dismissed with prejudice for lack of subject-matter jurisdiction.

---

**13.** Pursuant to the court's order on September 5, 1997, the Department's Agents, with the exception of Reynolds, have adopted their previously filed motion to dismiss Naguib's First Amended Complaint as their motion to dismiss Naguib's Second Amended Complaint.

**14.** Of course, defendants are always well advised to carefully scrutinize a plaintiff's complaint to determine whether a federal court has subject-matter jurisdiction.

## 2. *M. Sanders*

M. Sanders is a licensed dentist, connected in some capacity with the Department, sued in his personal capacity. M. Sanders merely argues that Naguib's Complaint should be dismissed because he is not a statutory employer. As such, M. Sanders fails to address whether Naguib states a cause of action under § 1983 and § 1985 which is not limited to employers. Thus, M. Sanders' motion to dismiss is denied, and the case shall continue as to him.

However, if M. Sanders intends to file another motion to dismiss, he shall file his motion on or before December 15, 1997. If M. Sanders files such a motion, Naguib shall file his response on or before December 22, 1997, and M. Sanders shall file his reply on or before December 30, 1997.

## 3. *Malnak*

Malnak is a licensed physician, connected in some capacity with Gottlieb Hospital, sued in his personal capacity. Naguib alleges that Malnak disseminated false information about Naguib, and used the Department to fabricate charges against him in order to force him out of practice because he is Egyptian. Naguib also alleges that Malnak refused to pay him for services he rendered to patients. Further, Malnak, along with two other doctors, allegedly created an abusive and hostile working environment at Gottlieb by picking on him about his nationality and his degree. As a result, Naguib felt it was unsafe for him to treat his patients at Gottlieb. In addition, Naguib alleges that Malnak conspired with the Department, Jeddeloh, M. Sanders, S. Sanders, Vold, Lowery, and Reynolds to create false allegations and to initiate an illegal investigation by the Department.

█ Malnak moves to dismiss, and argues that these factual allegations are not enough to state a § 1983 claim against Malnak. In order to survive a motion to dismiss Naguib's § 1983 claim, Naguib's pleadings must allege sufficient facts from which it could be reasonable inferred that Malnak

conspired with the Department. *See Ahmed,* 1997 WL 471335, at \*3; *see also Vickery,* 100 F.3d at 1343–44. Conclusory allegations of such a conspiracy is not sufficient to withstand a motion to dismiss. *See Ahmed,* 1997 WL 471335, at \*3; *see also Thomas,* 1997 WL 473917, at \*2. Neither is it sufficient to allege that Malnak provided false information to the Department, encouraging the Department to investigate Naguib. *See Howard v. Bd. of Educ. of Sycamore Community Unit School Dist. No. 427,* 876 F.Supp. 959, 968 (N.D.Ill.1995).

Here, Naguib merely asserts that Malnak used the Department, and that he conspired with the Department. This is not enough. Clearly, if Malnak and the Department were in cahoots, Malnak would not need to provide false information to the Department or need to encourage the Department to initiate an investigation. *See Id.* Since Naguib's conclusory allegation of a conspiracy between Malnak and the Department is not supported by sufficient factual allegations suggesting a meeting of the minds, Naguib's § 1983 claim against Malnak is dismissed. *See Ahmed,* 1997 WL 471335, at \*3.

█ Further, Naguib states that "[t]his cause could have been avoided and all the atrocities could have been also avoid if the state agency [the Department] investigated the motive of all defendants before starting their torture and going farther with shameful proceeding." (Pl.'s Reply to Hinsdale et al. at 7.) Thus, Naguib acknowledges that the Department did not enter into any agreement to conspire against Naguib, and has thereby pleaded himself out of court under his § 1983 claim.[15] *See Soo Line R.R. Co.,* 125 F.3d at 483.

However, since Malnak failed to address Naguib's § 1985 claim, Naguib's § 1985 claim shall proceed against Malnak. If Malnak intends to file another motion to dismiss, he shall file his motion on or before December 15, 1997. If Malnak files such a motion, Naguib shall file his response on or before December 22, 1997, and Malnak shall file his reply on or before December 30, 1997.

---

**15.** Since Naguib acknowledges that the Department did not agree with any of the other Defendants to conspire against Naguib to deprive him of a constitutional right, Naguib cannot state a cause of action against any of the private Defendants under § 1983.

#### 4. *Choukas*

Choukas is a licensed dentist, connected in some capacity with Gottlieb Hospital, sued in his personal capacity. In his motion to dismiss, Choukas argues that Naguib's Complaint should be dismissed because he was not named in Naguib's EEOC complaint and is not a statutory employer. As such, Choukas' motion fails to address Naguib's § 1983 and § 1985 claims which are not limited to employers. Thus, Choukas' motion is denied, and the case shall continue as to him.

However, if Choukas intends to file another motion to dismiss, he shall file his motion on or before December 15, 1997. If Choukas files such a motion, Naguib shall file his response on or before December 22, 1997, and Choukas shall file his reply on or before December 30, 1997.

#### 5. *S. Sanders*

S. Sanders is a licensed dentist, connected in some capacity with the Department, sued in his personal capacity. S. Sanders argues that Naguib's Complaint should be dismissed because he is not a statutory employer. S. Sanders fails to address Naguib's § 1983 and § 1985 claims which are not limited to employers. Thus, S. Sanders' motion is denied, and the case shall continue as to him.

However, if S. Sanders intends to file another motion to dismiss, he shall file his motion on or before December 15, 1997. If S. Sanders files such a motion, Naguib shall file his response on or before December 22, 1997, and S. Sanders shall file his reply on or before December 30, 1997.

#### 6. *Hinsdale, Glassford, Nathan, Zeck, and Beatty*

Hinsdale is sued in its general capacity. Glassford, Zeck, and Beatty, are licensed physicians, and Nathan, is a licensed dentist, and they are connected in some capacity with Hinsdale, sued in their personal capacities. Naguib alleges that Nathan, a credential committee member at Hinsdale, initiated an investigation against Naguib for no reason, except his "mysterious connection" with the Department. As a result, Beatty, chairman of the credential committee at Hinsdale, told

Naguib that he needed evidence in support of Naguib's existing privileges at Hinsdale. Naguib further alleges that Beatty should have known that Nathan's investigation was malicious in nature, and should not have been abusive, irrational, and indifferent. As for Zeck, Naguib merely alleges that the Department had subpoenaed Zeck for portions of Naguib's file, and that Zeck informed him of the subpoena. As for Glassford, Naguib alleges that Glassford made negative statements about Naguib to the Department.

Hinsdale, Glassford, Nathan, Zeck, and Beatty move to dismiss Naguib's claims, and argue that Naguib fails to state a claim under § 1983 and § 1985 because Naguib has not pled (1) sufficient facts to demonstrate the existence of a conspiracy; (2) facts exhibiting state action on their parts; or (3) facts showing animus against him due to his national origin. The court agrees. Naguib's pleadings are devoid of any allegations that Hinsdale, Glassford, Nathan, Zeck, and Beatty conspired with either the Department or any other person to deprive Naguib of his civil rights.

With respect to Hinsdale, Naguib appears to be suing Hinsdale in its general capacity because its agents allegedly violated § 1983 and § 1985. The doctrine of respondeat superior, however, is not recognized in § 1983 cases. *See Gossmeyer v. McDonald,* 128 F.3d 481, 494 (7th Cir.1997) ("The doctrine of respondeat superior cannot be used to impose § 1983 liability on a supervisor."); *West v. Waymire,* 114 F.3d 646, 649 (7th Cir.1997) ("But the doctrine of respondeat superior is not available to a plaintiff in a section 1983 suit."); *Malak v. Assoc. Physicians, Inc.,* 784 F.2d 277, 282 (7th Cir.1986) (*citing Monell v. Dept. of Social Serv. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)) (recognizing that a hospital cannot be held liable for a § 1983 violation under the doctrine of respondeat superior). Similarly, the doctrine of respondeat superior is not available in claims brought under § 1985. *See Collier v. Rodriguez,* No. 96 C 0023, 1996 WL 535326, at *3 (N.D.Ill.1996) (*Monell*'s prohibition of liability based solely on respondeat superior applies to claims brought under § 1985.)

Consequently, Naguib cannot state either a § 1983 or a § 1985 claim against Hinsdale for its agents' alleged misconduct, and his Complaint against Hinsdale is dismissed with prejudice.

■ With respect to Glassford, Naguib merely alleges that Glassford made negative statements to the Department. "Providing information (false or otherwise) and encouraging a state actor to act in a certain way, without more, does not constitute joint action." *See Howard v. Bd. of Educ. of Sycamore Community Unit School Dist. No. 427,* 876 F.Supp. 959, 968 (N.D.Ill.1995). Thus, Naguib fails to state a claim under § 1983. Further, since Naguib states no other allegations, he fails to state a claim under § 1985 which requires a conspiracy between two or more persons for the purpose of depriving a person equal protection of the laws. *See Majeske,* 94 F.3d at 311.

With respect to Nathan, Naguib alleges that Nathan initiated a malicious investigation against Naguib. Naguib's speculative allegation that the only reason Nathan initiated an investigation was because of his mysterious connection with the Department is not enough to save his § 1983 and § 1985 claim. Liberally construing Naguib's pleadings, the court can only infer a conclusory allegation of a conspiracy between Nathan and the Department, which is not enough to state a § 1983 claim. *See Ahmed,* 1997 WL 471335, at *3. In addition, since Naguib does not allege that Nathan conspired with another person with a discriminatory animus, Naguib fails to state a § 1985 claim. *See Majeske,* 94 F.3d at 311.

With respect to Zeck, Naguib alleges nothing other than that Zeck received a subpoena from the Department. This is clearly not enough to state either a § 1983 or a § 1985 claim, and requires no further discussion.

With respect to Beatty, Naguib only alleges that Beatty responded to Nathan's request for an investigation into his credentials, and that Beatty failed to recognize that Nathan was merely harassing Naguib. Naguib does not allege that Beatty was a member of the massive conspiracy against him, or that he acted with any discriminatory animus. Hence, Naguib fails to state either a § 1983

or a § 1985 claim against Beatty. *See Ahmed,* 1997 WL 471335, at *3; *see also Vickery,* 100 F.3d at 1343–44; *Majeske,* 94 F.3d at 311.

Accordingly, Naguib's § 1983 and § 1985 claims are dismissed against Hinsdale, Glassford, Nathan, Zeck, and Beatty.

### 7. *Pecaro*

Pecaro is a licensed dentist and physician, connected in some capacity with Columbus and Northwestern University, sued in his personal capacity. Although listed as a party, Naguib's Complaint is devoid of any allegations against Pecaro. However, Naguib's responsive pleading alleges that he sent a letter to Pecaro, requesting Pecaro to credit him for his experience and training so that he could obtain board certification. Instead of helping Naguib, Pecaro allegedly used Naguib's curriculum vitae "AS A TOOL for the Department" to conduct its "illegal investigation" of Naguib. According to Naguib, Pecaro was upset because of Naguib's remarkable performance. Naguib further asserts that Pecaro discriminated against him by joining the massive conspiracy.

■ Pecaro moves to dismiss Naguib's § 1983 and § 1985 claims because Naguib failed to allege any facts to support his claims. The court agrees. All that can be reasonable inferred from Naguib's factual allegations is that Malnak used Naguib's curriculum vitae to encourage the Department to initiate an investigation against Naguib. Providing information to the Department is not enough to support the existence of a conspiracy between Pecaro and the Department. *See Howard,* 876 F.Supp. at 968. Nor is Naguib's conclusory allegation that Pecaro joined the massive conspiracy sufficient to withstand a motion to dismiss his § 1983 and § 1985 claims. *See Ahmed,* 1997 WL 471335, at *3; *see also Thomas,* 1997 WL 473917, at *2. Naguib "must plead specific material facts that show the existence of a conspiracy." *Copeland,* 964 F.Supp. at 1235. Accordingly, Pecaro's motion to dismiss is granted.

■ Furthermore, with respect to Naguib's § 1985 claim against Pecaro, Naguib fails to allege any discriminatory animus behind Pecaro's actions, which is an essential element. *See Majeske,* 94 F.3d at 311. In fact, Naguib asserts that Pecaro acted the way he did because he was jealous of Naguib's remarkable performance. As a result, Naguib has plead himself out of court under his § 1985 claim against Pecaro. *See Soo Line R.R. Co.,* 125 F.3d at 483. Therefore, Naguib's § 1983 and § 1985 claims against Pecaro are dismissed.

### 8. *Jeddeloh*

Jeddeloh is an attorney, sued in his personal capacity. Naguib alleges that Jeddeloh conspired with the Department and several of the other Defendants to deprive him of his civil rights. According to Naguib, he hired Jeddeloh as an attorney to represent his interests and rights. However, Naguib asserts that Jeddeloh inadequately represented his interests in several ways, including (1) failure to inform him of agencies such as the EEOC and the IDHR; (2) misguiding him with false information; (3) employing delay tactics; and (4) producing an incomplete file. Naguib concludes that Jeddeloh participated in the massive conspiracy because he discovered that Jeddeloh was previously employed by Illinois University Hospital, Westlake, Gottlieb, and several managed care organizations, and that Jeddeloh has good connections with the Department.

■ Jeddeloh moves to dismiss Naguib's § 1983 and § 1985 claims for failure to allege that Jeddeloh was involved in any state action, or that Jeddeloh was a participant in a conspiracy to deprive Naguib of any civil rights. Even assuming Naguib's factual allegations are true, the court cannot reasonably infer that Jeddeloh conspired with the Department or any other person to deprive Naguib of his civil rights. At best, Naguib's allegations indicate that Jeddeloh might have inadequately represented Naguib. Inadequate representation, however, does not equate to participation in a conspiracy. Thus, Naguib's allegations of Jeddeloh's participation in a massive conspiracy because of his discriminatory animus is nothing more than conclusory. A complaint inadequately alleges conspiracy and discriminatory animus if its factual allegations are vague and conclusory. *See Ahmed,* 1997 WL 471335, at *3; *Bombliss,* 1994 WL 117970, at *3; *Copeland,* 964 F.Supp. at 1235; *Thomas,* 1997 WL 473917, at *2. Accordingly, Naguib fails to state either a § 1983 or a § 1985 claim against Jeddeloh, and his Complaint against Jeddeloh must be dismissed.

### 9. *Simon*

Simon is an attorney, sued in his personal capacity. Naguib hired Simon to represent him against the Department's allegations. Naguib claims that it was evident to him that Simon had joined the massive conspiracy because of the following facts: (1) Simon refused to audio-tape the meetings with the Department, and was furious when he learned that Naguib hired a company to do so; (2) Simon promised that a person would impartially transcribe the meeting with the Department which was untrue; (3) Simon cordially communicated with Vold, who was a fraternity friend; (4) Simon relied on Vold's information which was completely false and unreliable; (5) Simon refused to disclose "AFFIDAVIT OF A CLINICAL DATA MANAGER AND A [SURGEON / DENTIST]" to the Department; (6) Simon sat during the meetings with the Department and did nothing; (7) Simon walked backwards and stared at Naguib in a strange manner while Naguib said good-bye to him; (8) Simon failed to refer Naguib to an experienced attorney; (9) Simon failed to adequately defend him against the Department's allegations; and (10) Simon initiated some "documented material" from Naguib's liability insurance.

■ Simon moves to dismiss Naguib's Complaint as merely containing confusing and conclusory allegations, which fail to give rise to any claim. Other than the fact that Simon cordially communicated with Vold, one of the Department's agents, Simon allegedly acted alone. Merely communicating with Vold is not enough to show a "meeting of the minds." *See Ahmed,* 1997 WL 471335, at *3; *see also Copeland,* 964 F.Supp. at 1235. Further, Naguib fails to allege that Simon

acted with any person other than Vold, or to allege that Simon acted with any discriminatory animus. *See Majeske,* 94 F.3d at 311. Naguib's conclusory and speculative allegation that it was apparent to him that Simon joined the massive conspiracy is simply not enough. *See Ahmed,* 1997 WL 471335, at *3; *Bombliss,* 1994 WL 117970, at *3; *Copeland,* 964 F.Supp. at 1235; *Thomas,* 1997 WL 473917, at *2. Thus, because Naguib fails to state either a § 1983 or § 1985 claim against Simon, the court grants Simon's motion to dismiss.

■ The only remaining issue is whether Naguib's claims should be dismissed with prejudice. Although a pro-se litigant should be given every opportunity to state a claim cognizable in federal court, courts are not obligated to "provide a carte blanche for unlimited successive complaint amendments." *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1208 (7th Cir.1980). When it is apparent that further opportunities to amend the complaint is futile, the complaint's "adequacy to withstand a motion to dismiss should be determined as it stands." *Id.; see also Garcia,* 24 F.3d at 970 (The district court may deny plaintiff leave to amend if the amended complaint sought to be filed would be futile.)

■ In this case, Naguib has filed three amended complaints without alleging any facts to suggest the meeting of minds necessary to state a § 1983 or a § 1985 claim. *See Ahmed,* 1997 WL 471335, at *3 (citation omitted); *see also Copeland,* 964 F.Supp. at 1235. In order to state a § 1983 claim, Naguib is required to allege sufficient facts to show that each private individual conspired with the Department. *See Vickery,* 100 F.3d at 1343–44; *Csoka,* 1996 WL 467654, at *3; *Starnes,* 39 F.3d at 1397; *see also Tarkowski,* 644 F.2d at 1208 ("A private person does not conspire with a state official merely by invoking an exercise of the state official's authority."). Furthermore, under § 1985, Naguib is required to allege sufficient facts to show that two or more persons conspired, and that discriminatory animus was behind the conspirators' action. *See Majeske,* 94 F.3d at 311. Merely speculative or conclusory allegations of a massive con-

spiracy is not enough to state either a § 1983 or a § 1985 claim. *See Ahmed,* 1997 WL 471335, at *3; *Bombliss,* 1994 WL 117970, at *3; *Copeland,* 964 F.Supp. at 1235; *Thomas,* 1997 WL 473917, at *2.

Naguib has not given the court any reason to believe that he can state a cognizable claim in federal court. Thus, the court could dismiss all motions granted in the foregoing with prejudice. *See Tarkowski,* 644 F.2d at 1208; *Garcia,* 24 F.3d at 970. However, since Naguib is a pro-se litigant, the court grants the foregoing motions to dismiss without prejudice, unless explicitly stated otherwise. *See Gutierrez,* 111 F.3d at 1369; *Donald,* 95 F.3d at 555.

### III. CONCLUSION

For the foregoing reasons, the court dismisses Naguib's Second Amended Complaint with prejudice against the following Defendants: (1) Zollar; (2) Benden; (3) Sirefman; (4) Lowery; (5) Reynolds; (6) Vold; (7) O'Sullivan; and (8) Hinsdale. Naguib's Second Amended Complaint is dismissed without prejudice against the following Defendants: (1) Glassford; (2) Nathan; (3) Zeck; (4) Beatty; (5) Pecaro; (6) Jeddeloh; and (7) Simon. Further, Naguib's § 1983 claim is dismissed without prejudice against Malnak.

Therefore, all that remains of Naguib's Second Amended Complaint is his § 1985 claim against Malnak, and his § 1983 and § 1985 claims against M. Sanders, S. Sanders, Choukas, Locker, and the State's Attorney's Office. If Malnak, M. Sanders, S. Sanders, Choukas, Locker, and the State's Attorney's Office intend to file a new motion to dismiss Naguib's Second Amended Complaint, they shall file their motions on or before December 15, 1997. If they file such motions, Naguib shall file his response to their motions on or before December 22, 1997, and Malnak, M. Sanders, S. Sanders, Choukas, Locker, and the State's Attorney's Office shall file their reply on or before December 30, 1997.

Finally, because most Defendants are dismissed without prejudice, Naguib may amend his Second Amended Complaint. However, since the court has set forth a

briefing schedule for Malnak, M. Sanders, S. Sanders, Choukas, Locker, and the State's Attorney's Office to file a new motion to dismiss Naguib's Second Amended Complaint, Naguib should not amend his Second Amended Complaint until after the court has ruled on all forthcoming motions. Thus, if Naguib chooses to file another amended complaint, he shall do so no sooner than within 21 days after all matters are finally resolved with respect to his Second Amended Complaint. Before filing another amended complaint, Naguib is advised to carefully review this opinion, and proceed only if he has a good faith basis to do so.

IT IS SO ORDERED.